IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| SAIREE WRIGHT, *et al.*, | * | |
| | * | |
| v. | * | Civil Action No. CCB-21-809 |
| | * | |
| FRANCIS ALEXANDER AUDISIO n/k/a | * | |
| JOHN DOE, *et al.* | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Pending before the court is a partial motion to dismiss filed by defendant Francis Alexander Audisio, (ECF 8), and a motion to dismiss filed by defendant Maricela Alexandersson, (ECF 9). The motions have been fully briefed and no hearing is required. *See* Local Rule 105.6. For the reasons stated below, Mr. Audisio's motion will be denied in part and granted in part. Ms. Alexandersson's motion will be granted.

## BACKGROUND

The following facts are described as alleged in the amended complaint. (ECF 7, Am. Compl.). The plaintiff, Sairee Wright ("S. Wright"), and the defendant, Francis Alexander Audisio ("Audisio"), were involved in a romantic relationship and in 2015 resided together in St. Louis, Missouri. (ECF 7 ¶¶ 9-10). In June 2015, S. Wright's sister, plaintiff Haydee Wright ("H. Wright"), who was a 12-year-old child at the time, traveled to visit the residence of S. Wright and Audisio, who was then 22 years old. (ECF 7 ¶¶ 11-13). One night during the visit, after S. Wright fell asleep, Audisio forcibly raped H. Wright ("first assault"). (ECF 7 ¶ 16). Three years later, on March 20, 2018, H. Wright again visited S. Wright and Audisio, who remained in a relationship, now residing together in Pikesville, Maryland. At this time, H. Wright was still a minor child, 15 years of age, and Audisio was 25. (ECF 7 ¶¶ 18-20). One night during the visit, after S. Wright fell asleep,

Audisio again forcibly raped H. Wright, ("second assault"). (ECF 7 ¶ 22). After the second assault, H. Wright disclosed both assaults to S. Wright for the first time. (ECF 7 ¶ 23).

On or about August 10, 2018, following a dinner with Audisio's family, S. Wright and Audisio began to argue about the two assaults committed by Audisio. (ECF 7 ¶¶ 25-26). Audisio then "violently perpetuated a forceful physical touching of [S. Wright]," from which she sustained, among other things, "fractures to her skull and traumatic brain injury from which she never fully recovered." (ECF 7 ¶ 27). Alexandersson, allegedly acting on Audisio's behalf, gained access to the property that same day and destroyed evidence, including surveillance tapes, of the battery committed by Audisio on S. Wright. (ECF 7 ¶ 53).

The plaintiffs initiated this suit on March 30, 2021, and the amended complaint alleges nineteen counts. Seventeen counts are against Audisio. S. Wright, specifically, brings counts one through four, and count seven, against Audisio. Count one is for battery, count two is for intentional infliction of emotional distress, count three is for negligence, count four is for civil conspiracy, and count seven is for gross negligence. H. Wright brings counts eight through nineteen against Audisio, alleging separate but related claims arising from both incidents: battery (count eight and fourteen), intentional infliction of emotional distress (count nine and fifteen), negligence (count ten and sixteen), gross negligence (count eleven and seventeen), false imprisonment (count twelve and eighteen), and sexual abuse (count thirteen and nineteen). Against Alexandersson, S. Wright alleges civil conspiracy (count five) and aiding and abetting (count six).

Audisio moves to dismiss only the intentional infliction of emotional distress and civil conspiracy claims. Alexandersson moves to dismiss both the civil conspiracy claim and the aiding and abetting claim against her.

**STANDARD OF REVIEW**

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

**ANALYSIS**

**I. The Intentional Infliction of Emotional Distress Claims Against Audisio**

Both plaintiffs, Sairee and Haydee Wright, bring claims of intentional infliction of emotional distress ("IIED") against the defendant, Francis Audisio. S. Wright specifically alleges that Audisio is liable for IIED due to the physical battering of her person, which caused her to sustain extreme, permanent, and debilitating injuries. (ECF 7 ¶ 34). H. Wright claims that Audisio is liable for IIED for physically battering her person, causing her to sustain extreme mental anguish and emotional distress. (ECF 7 ¶¶ 76, 112). The defendant has moved to dismiss this claim on the

ground that both plaintiffs fail to allege facts showing either that Audisio's conduct was outrageous and extreme or that she suffered severe emotional distress. (ECF 8-1, at 6, 9, Mem. in Supp. of Mot. to Dismiss).

In order for a claim of intentional infliction of emotional distress to be successful in Maryland, "a plaintiff must demonstrate that the defendant intentionally or recklessly engaged in extreme and outrageous conduct that caused the plaintiff to suffer severe emotional distress." *Snyder v. Phelps*, 562 U.S. 443, 451 (2011) (citing *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)). Specifically, four elements must be sufficiently pled to state a claim for relief under IIED: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; (4) The emotional distress must be severe." *Harris*, 380 A.2d at 614 (internal references omitted). All elements "must be satisfied completely before a cause of action will lie," and responsibility for the initial determination of whether the elements have been satisfied belongs to the trial judge. *Hamilton v. Ford Motor Credit Co.,* 502 A.2d 1057, 1063 (Md. 1986) (citing *Harris*, 380 A.2d at 611). "Where reasonable [people] may differ, it is for the jury to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *Harris*, 380 A.2d at 615.

"In evaluating whether the identified conduct is extreme and outrageous, courts should consider multiple factors, including the context in which the conduct occurred, the personality of the plaintiff and [their] susceptibility to emotional distress, and the relationship between the defendant and plaintiff." *Mathis v. Goldberg*, 2013 WL 524708, at *10 (D. Md. Feb. 12, 2013), *aff'd,* 538 Fed. Appx. 310 (4th Cir. 2013).[1] Maryland courts have recognized the tort of

---

[1] Unpublished cases are cited for the soundness of their reasoning, not for precedential value.

4

IIED where the defendant "implement[ed] a course of extreme conduct" engaging in "repeated sexual intercourse" with the plaintiff's family member. *See Figueiredo–Torres v. Nickel*, 584 A.2d 69, 71, 75 (Md. 1991) (permitting IIED claim to go forward where plaintiff alleged psychologist engaged in sexual relations with plaintiff's wife during the time he was counseling the couple).

With respect to the IIED claims brought by H. Wright—who was a 12-year-old at the time the first assault took place and a 15-year-old at the time of the second assault—the court finds that she has sufficiently pleaded facts alleging conduct by Audisio which rise to the level of outrageous and extreme. H. Wright alleges that Audisio, who is ten years H. Wright's senior, intentionally and forcibly raped her twice, causing painful and permanent injuries and requiring medical care. Furthermore, H. Wright alleges that the traumatic assaults have disrupted her daily functioning and resulted in past and future medical and other related expenses as well as lost time from her daily pursuits. This is sufficient.

Plaintiff S. Wright alleges an assault sufficiently violent to result in a traumatic brain injury and arising out of a confrontation about the rape of a minor child in her care. Her ongoing daily functioning and pursuits have been impaired as a result. Thus, she has also stated a plausible claim for IIED, and the motion to dismiss these counts will be denied.

## II. The Civil Conspiracy Claims Against Audisio and Alexandersson

A claim for civil conspiracy requires proof of: "1) [a] confederation of two or more persons by agreement or understanding; 2) some unlawful or tortious act done in furtherance of the conspiracy or use of unlawful or tortious means to accomplish an act not in itself illegal; and 3) [a]ctual legal damage resulting to the plaintiff." *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 284 (Md. 2007) (citation omitted). "'[C]onspiracy' is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff." *Id.*

(quoting *Alleco Inc. v. The Harry & Jeanette Weinberg Foundation, Inc.*, 665 A.2d 1038, 1045 (Md. 1995)). "There is no doubt of the right of a plaintiff to maintain an action on the case against several, for conspiring to do, *and actually doing*, some unlawful act to his damage . . . It is not, therefore, for simply conspiring to do the unlawful act that the action lies. It is for doing the act itself, and the resulting actual damage to the plaintiff, that afford the ground of the action." *Alleco Inc.*, 655 A.2d at 1045 (quoting *Kimball v. Harman and Burch,* 34 Md. 407, 409 (1871)).

S. Wright alleges that Audisio and Alexandersson agreed to enter the property where the August 10, 2018, battery took place and destroy evidence of the battery and the resulting injury to S. Wright. (ECF 7 ¶¶ 46, 53). She cites to *Great American Insurance Co. v. Nextday Network Hardware Corp.*, 73 F. Supp. 3d 636 (D. Md. 2014) ("*Great American*"), to support her argument that "Maryland courts have clearly recognized that tort liability can be upheld for actions occurring after a completed offense . . . ." (ECF 10-1 at 11, Mem. in Supp. of Opp. to Mot. to Dismiss). The instant case, however, is distinguishable. S. Wright fails to allege Alexandersson participated in her battery claim, and also fails to identify the tort of destruction of evidence in her amended complaint. *See Lloyd*, 916 A.2d at 284; *see also Eichen v. Jackson & Tull Chartered Eng'rs*, 2019 WL 3968330, at *8-9 (Md. Ct. Spec. App. Aug. 22, 2019) (dismissing civil conspiracy allegation where plaintiff failed to plead underlying tort). Thus, she has failed to plead independent tortious conduct underlying the alleged conspiracy. In *Great American*, by contrast, the plaintiffs stated a plausible claim for the tortious act of conversion which supported the corresponding allegation that the defendants conspired by acting as a "fence" to facilitate the unlawful conversion of property. *See Great Am. Ins. Co.*, 73 F. Supp. 3d at 640-644. For the foregoing reasons, the court will grant the motions by Audisio and Alexandersson to dismiss the civil conspiracy claim against each of them.

**III. The Aiding and Abetting Claim Against Alexandersson**

Finally, Alexandersson argues the court should dismiss S. Wright's aiding and abetting claim against her on the grounds that the "plaintiff has not alleged that Alexandersson provided substantial assistance to Audisio in the commission of the battery, but instead that she 'perpetuat[ed] and assist[ed] in the destruction of evidence' after the fact." (ECF 9-1 at 8, Mem. in Supp. of Mot. to Dismiss).

Under Maryland law, a person who "encouraged, incited, aided or abetted the act of the direct perpetrator of the tort" may be held liable as a principal for the underlying tortious conduct. *Alleco Inc.*, 665 A.2d at 1049 (quoting *Duke v. Feldman*, 226 A.2d 345, 347 (Md. 1967)). To be held liable for aiding and abetting, there must, necessarily, be a "direct perpetrator of the tort." *Id.* (quoting *Duke*, 226 A.2d at 347). "Thus, civil aider and abettor liability, somewhat like civil conspiracy, requires that there exist underlying tortious activity in order for the alleged aider and abettor to be held liable." *Id.*

In the present case, the plaintiffs allege that Alexandersson "provided substantial assistance, aid, and encouragement in the . . . destruction of evidence." (ECF 7 ¶ 60). The plaintiffs do not allege, however, that Alexandersson gave substantial assistance or encouragement to Audisio to engage in the underlying torts, that is, the claims stemming from the assaults, and as discussed above, they have not alleged tortious destruction of evidence. As a result, Alexandersson cannot be held liable as an aider and abettor and the court will grant her motion to dismiss on this claim.

## CONCLUSION

For the reasons stated above, the court will deny Audisio's motion to dismiss as to the intentional infliction of emotional distress claims and grant his motion to dismiss as to the civil

conspiracy claim. The court will grant Alexandersson's motion to dismiss. A separate order follows.

| | |
|---|---|
| 09/30/2022 | /s/ |
| Date | Catherine C. Blake<br>United States District Judge |