# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| SAIREE WRIGHT, ET AL., | * |
| Plaintiffs, | * |
| v. | * |
|  | *   Civil No. 21-809-BAH |
| FRANCIS ALEXANDER AUDISIO, | * |
| Defendant. | * |

\* \* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiffs Sairee Wright ("Plaintiff" or "Sairee"),[1] an incapacitated person, by and through her guardian and conservator, Shiloh Wright, and Haydee Wright ("Haydee") (collectively "Plaintiffs") brought suit against Defendant Francis Alexander Audisio ("Defendant" or "Audisio")[2] and former-Defendant Maricela Alexandersson[3] alleging various torts. ECF 47 (second amended complaint).[4] Sairee alleges claims of battery (Count I), intentional infliction of emotional distress (Count II), negligence (Count III), and gross negligence (Count IV) against Audisio, arising from a traumatic brain injury Sairee suffered during an alleged altercation with

---

[1] The Court refers to Plaintiffs by their first names for the purpose of distinguishing them. The operative complaint also refers to Plaintiffs by their first names. *See* ECF 47.

[2] In the original complaint, Audisio was identified as "John Doe." *See* ECF 1. In the first amended complaint, Plaintiffs substituted "John Doe" for "Francis Alexander Audisio." *See* ECF 7-1, at 1.

[3] The amended complaint contained claims of civil conspiracy (Count V) and aiding and abetting liability (Count VI) against Maricela Alexandersson, *see* ECF 7, at 9–8, which were dismissed by Judge Blake on September 30, 2022, *see* ECF 13 (memorandum opinion); ECF 14 (implementing order). Accordingly, Alexandersson was terminated from the case as a defendant.

[4] The original complaint can be found at ECF 1, and the first amended complaint is at ECF 7.

Audisio in August 2018.[5]  *Id.* at 4–6.  Haydee also alleges various torts against Audisio arising from two separate sexual assaults that allegedly occurred in June of 2015 and June of 2018, when Haydee was a minor.[6]  Plaintiffs seek compensatory and punitive damages against Audisio, plus interest and costs.  *See id.* at 18.

Pending before the Court are Sairee's motion for partial summary judgment as to her alleged physical injuries and future economic damages, ECF 59, and Audisio's cross-motion for partial summary judgment on all counts related to the August 2018 incident involving Sairee, ECF 64.[7]  Sairee filed a reply and opposition to Audisio's motion, ECF 68, and Audisio filed a reply to Sairee's opposition, ECF 69.  All filings include memoranda of law and exhibits.[8]  The Court has reviewed all relevant filings and finds that no hearing is necessary.  *See* Loc. R. 105.6 (D. Md. 2025).  Accordingly, for the reasons stated below, Sairee's partial motion for summary judgment is **DENIED** and Audisio's partial motion for summary judgment is **DENIED**.

## I. BACKGROUND

The Court begins by providing some background as to the parties and their relationships to give context to the August 2018 incident.  Sairee and Audisio met at Saint Louis University where both were undergraduate students.  ECF 64-3, at 23–24.  They began dating in college and were

---

[5] This case was originally assigned to Judge Blake.  It was reassigned to the undersigned on May 31, 2024.  Judge Blake dismissed Sairee's civil conspiracy claim against Audisio on September 30, 2022.  ECF 14 (implementing order); *see also* ECF 13 (memorandum opinion).

[6] Specifically, Haydee alleges battery (Counts V and XI), intentional infliction of emotional distress (Counts VI and XII), negligence (Counts VII and XIII), gross negligence (Counts VIII and XIV), false imprisonment (Counts IX and XV), and sexual abuse (Counts X and XVI) for both assaults.  ECF 47, at 7–17.

[7] ECF 64 also constitutes Audisio's opposition to Sairee's motion for partial summary judgment.

[8] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page.

in a romantic relationship in August of 2018. ECF 59-6, at 24; ECF 64-3, at 22–24. During her senior year, Sairee left Saint Louis University to move in with Audisio in the Caribbean, where he was attending Trinity School of Medicine, which is located in Saint Vincent and the Grenadines. ECF 64-3, at 21–22, 25–26; ECF 59-3, at 12. While in the Caribbean, Audisio met another woman, with whom he admits he engaged in sexual acts during some period of time while he was in a relationship with Sairee, which Sairee at some point learned about and objected to. ECF 59-6, at 24–25; ECF 64-3, at 27. Sairee and Audisio then moved to Maryland in 2017, again for the purposes of Audisio's medical education. ECF 64-3, at 33–34. Sairee worked in Maryland as a preschool teacher. ECF 59-8, at 3; ECF 64-3, at 104.

In August of 2018, Sairee and Audisio resided together in the Pomona Apartment Complex in Baltimore County, Maryland. ECF 64-3, at 104, 106, 215; ECF 59-3, at 4–5. On the evening of August 10, 2018, Sairee and Audisio returned home to their apartment, along with Audisio's brother, after eating dinner with Audisio's family. ECF 64-3, at 14, 99, 108–10, 112–13, 115, 119–22; ECF 68-5, at 3–4. Sairee and Audisio argued shortly after arriving home. ECF 59-6, at 26; ECF 64-1, at 2; ECF 64-1, at 122–23. What transpired during and following that argument is disputed. *See, e.g.*, ECF 47, at 3–4 ¶¶ 24–26; ECF 59-6, at 26; ECF 64-1, at 2–3; ECF 64-3, at 123–33. Audisio's brother reported being "woken up by [Sairee] and Audisio arguing, so he left the location briefly" and "[w]hen he returned, they were both gone." ECF 68-5, at 3–4. Audisio's brother also reported that "Audisio later returned and changed his clothes a short time later," then "left again." *Id.* at 4.

Sairee does not remember at least some portions of the evening of August 10, 2018, including the cause of her injuries. ECF 59-7, at 9, 18. However, Audisio has recounted his memories of the evening on several occasions. In a statement to investigating law enforcement

3

following the incident, Audisio "explained that he and [Sairee] had gotten into a verbal altercation about their families while they were drinking and she drank an entire bottle of wine." ECF 68-5, at 3. Audisio stated to police that Sairee had "left the apartment alone," and after "approximately 20-30 minutes had passed . . . he went outside to look for her." *Id.* at 3–4. Audisio explained to police that "he located [Sairee] crawling from the wooded area . . . [and] advised that he picked her up, and carried her to the gatehouse while he yelled for help." *Id.* Audisio reported that he found Sairee outside their apartment, and he testified at his deposition that he spotted her from the balcony of their apartment lying "on the curb between the road and the grass where [a] park bench is." ECF 59-6, at 27; ECF 64-3, at 126–27, 140, 151.

While carrying her towards the gatehouse, Audisio testified that he tripped and fell, resulting in scratches on his palms and a broken toe. ECF 64-3, at 130, 145, 147, 153, 183. A surveillance camera recorded Audisio approaching the gatehouse and the events that followed. *See* ECF 64-3, at 203; ECF 64-5, at 2 (referencing Exhibit C); Exhibit C (gatehouse footage). Two bystanders appear in the video, one of whom attempts to assist Audisio in setting Sairee on the ground. Ex. C, at 02:13, 02:22–30; ECF 64-3, at 207–08. Sairee's head makes contact with the ground as she is set down, Ex. C, at 02:25–30, however the parties dispute the force of that impact, *see, e.g.*, ECF 64-3, at 209–10. Baltimore County Emergency Medical Services were eventually called to the apartment complex by a gatehouse attendant. ECF 59-7, at 4; ECF 64-3, at 151, 154–55. Responding officers reported "that they observed injuries to Audisio's face, bottom lip, and the left side of his neck." ECF 68-5, at 3–4.

Sairee was taken by ambulance to LifeBridge Sinai Hospital, where she was treated for multiple serious injuries, including skull fractures to her right temporal bone and to her occipital bone. ECF 59-4, at 2; ECF 59-5, at 1. Dr. Omar Zalatimo, a neurosurgeon at Sinai Hospital who

"encountered Sairee Wright shortly after her admission . . . in the evening hours of August 10, 2018," wrote that "[i]t was reported that [Sairee] was in an altercation with her boyfriend and presented to the emergency room after she was found down and unresponsive." ECF 59-5, at 1. Imaging of Sairee's brain revealed a large left subdural hematoma[9] with shifting of her brain from right to left. ECF 59-4, at 2; ECF 59-5, at 1. Testing showed the Sairee also had an ethanol ("ETOH") level[10] of 193 and urine positive for cannabinoids. ECF 59-5, at 1. Sairee underwent a left-sided craniectomy to evacuate the hematoma and had a portion of her skull temporarily removed to try to provide room for the brain to swell without creating excessive intracranial pressure. ECF 59-4, at 2; ECF 59-5, at 1–2. After the procedure, Sairee was placed into a pentobarbital coma. ECF 29-5, at 2. Her injuries at first rendered her unable to breath, chew, and swallow on her own. ECF 59-5, at 2. As a result, "a tracheostomy tube was placed in [Sairee]'s trachea to provide oxygen" and a feeding tube was placed. *Id.* Eventually, Sairee's condition improved enough to be taken out of the induced coma, and she was discharged from the hospital on September 28, 2018. *Id.*; ECF 64-4, at 2.

Law enforcement investigated the apartment and Audisio following the incident. In the apartment, investigators reported finding a "[s]mall amount of blood on the bed and pillow in the main bedroom," "[a] blood smear on the wall near the bedroom closet," and "[s]everal spots of blood on the carpet near the bedroom closet." ECF 68-5, at 5. "A large section of carpet was removed from this area which also revealed a substantial amount of blood which had soaked through to the carpet padding." *Id.* Detectives also conducted a search of Audisio's person, and

---

[9] A subdural hematoma is a collection of blood between the dura, or the membrane that lines the cranial cavity, and the brain, which can compress and shift the brain. ECF 59-4, at 2.

[10] An ETOH level is one way of measuring the concentration of ethanol, or alcohol, in the blood. *See, e.g., Tran v. United of Omaha Life Ins. Co.*, 780 F. Supp. 2d 965, 970 (D. Neb. 2011).

"obtained photographs of scratches on the Defendant's face, neck, back, chest, and back of head." *Id.* An officer also observed Audisio "to have a busted lip and a broken right second toe." *Id.*

Since August of 2018, Sairee has undergone extensive medical treatments for her head injuries, including surgery and extensive physical, occupational, speech, and cognitive therapies. *See id.*; ECF 59-7, at 1–30; ECF 59–8, at 3. Although Sairee's condition has improved significantly since the initial date of the incident, *see generally* ECFs 59-7 and 59-8, it is undisputed that the head injuries sustained by Sairee continue to be incapacitating, *see* ECF 59-6, at 26. Sairee was evaluated by neuropsychologist Dr. Jeffrey Cory in 2023, who opined that Sairee has permanent neurocognitive and intellectual functioning deficits representing a Major Neurocognitive Disorder, as a result of her significant traumatic brain injury. ECF 59-7, at 29. Dr. Cory has further opined that Sairee, at "nearly 5 years post [traumatic brain injury]," has "recovered as much as can be expected," and "her Major Neurocognitive Disorder therefore is a permanent condition." *Id.* at 30. Dr. Cory believes that Sairee permanently lacks the skills and functions required to live independently and manage her own financial and legal affairs. *See id.*

Plaintiffs have also retained a certified life care planner, Nancy Bond, who has coordinated with Dr. Cory and Sairee's treating physicians to develop a life care plan based on Sairee's future needs related to her injuries. ECF 59-8, at 1–26. The life care plan includes necessary services including, but not limited to, follow-up care with neurology, psychiatry, pain management, physical therapy, speech/cognitive therapy, medications, and daily home health aides. *See id.* Ms. Bond valued the cost of future care for Sairee at $8,429,084.54. *Id.* at 26. Plaintiffs' expert economist, Dr. Thomas C. Borzilleri, places the present-day value of such services and care at $5,316,842.00. ECF 59-9, at 19. Audisio has not named an expert to evaluate the current or future

state of Sairee's injuries. *See* ECF 59-10, at 1–2. Further, "Audisio concedes that Plaintiffs' expert report and Sairee's medical bills are truthful[.]" ECF 64-1, at 9.

Discovery in this case has closed, *see* ECF 38, and the dispositive motions deadline has passed, *see* ECFs 60 and 61. The parties' motions for partial summary judgment are now ripe for decision.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). "When faced with cross-motions for summary judgment, the court must review each motion separately on its own merits 'to determine whether either of the parties deserves judgment as a matter of law.'" *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (quoting *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).

"Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine factual dispute exists." *Progressive Am. Ins. Co. v. Jireh House, Inc.*, 608 F. Supp. 3d 369, 373 (E.D. Va. 2022) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86 (1986)). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). Accordingly, "the mere existence of *some* alleged factual dispute

7

between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247–48 (emphasis in original).

The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007), and the Court "may not make credibility determinations or weigh the evidence," *Progressive Am. Ins. Co.*, 608 F. Supp. 3d at 373 (citing *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 213 (4th Cir. 2007)). For this reason, summary judgment ordinarily is inappropriate when there is conflicting evidence because it is the function of the factfinder to resolve factual disputes, including matters of witness credibility. *See Black & Decker Corp. v. United States*, 436 F.3d 431, 442 (4th Cir. 2006); *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644–45 (4th Cir. 2002).

At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)). "The existence of a mere scintilla of evidence in support of the nonmoving party as well as conclusory allegations or denials, without more, are insufficient to withstand a summary judgment motion." *Progressive Am. Ins. Co.*, 608 F. Supp. 3d at 373 (citing *Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)).

## III. ANALYSIS

Sairee seeks partial summary judgment as to the matter of future economic damages in the amount of $5,316,842.00. *See* ECF 59. Audisio seeks partial summary judgment as to all claims brought against him by Sairee arising out of the August 10, 2018 incident. The Court addresses Audisio's cross-motion first, and turns to Sairee's motion second.

### A.   Audisio's Cross-Motion (Counts I, II, III, and IV)

Counts I, II, III, and IV of the second amended complaint all arise from the August 10, 2018 incident. *See* ECF 47. The Court will briefly recite the elements of all the claims since Audisio's argument for summary judgment rests solely on the issue of whether he caused Sairee's injuries, which is accurately presented as equally relevant to all counts.

Count I alleges battery. *Id.* at 4. Under Maryland law, "[a] battery occurs when one intends a harmful or offensive contact with another without that person's consent." *Nelson v. Carroll*, 735 A.2d 1096, 1099 (Md. 1999) (citing Restatement (Second) of Torts § 13 & cmt. d (1965)). Count II alleges intentional infliction of emotional distress. ECF 47, at 4–5. To recover for intentional infliction of emotional distress ("IIED") under Maryland law, a plaintiff must establish that "(1) the defendant's conduct was intentional or reckless; (2) the conduct was extreme or outrageous; (3) there is a causal connection between the wrongful conduct and the emotional distress; and (4) the emotional distress is severe."[11] *Brengle v. Greenbelt Homes, Inc.*, 804 F. Supp. 2d 447, 452 (D. Md. 2011) (citing *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977)). Count III alleges negligence. ECF 47, at 5–6. To prevail on that claim under Maryland law, a plaintiff must show "(l) that the defendant was under a duty to protect the plaintiff from injury, (2) that the defendant breached that duty, (3) that the plaintiff suffered actual injury or loss, and (4) that the loss or injury proximately resulted from the defendant's breach of the duty." *Moore v. Myers*, 868 A.2d 954, 962 (Md. App. 2005) (quoting *Horridge v. Saint Mary's Cnty. Dep't of Soc. Servs.*, 854 A.2d 1232, 1238 (Md. 2004)). The element of causation requires both "cause in fact" and "a legally cognizable cause." *See Winffel v. Westfield Prop. Mgmt., LLC*, 435 F. Supp. 3d 686, 693 (D. Md. 2020)

---

[11] Audisio asserts that "Plaintiffs do not address battery or IIED in their memorandum." ECF 69-1, at 4. That assertion is inaccurate. *See* ECF 68-1, at 5 (discussing the elements of battery and intentional infliction of emotional distress under Maryland law).

9

(quoting *Pittway Corp. v. Collins*, 973 A.2d 771, 786 (Md. 2009)). And finally, gross negligence, alleged in Count IV, ECF 47, at 6–7, is "something more than simple negligence"—"a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist." *Barbre v. Pope*, 935 A.2d 699, 717 (Md. 2007) (emphasis omitted).

As noted, Audisio argues that "[a]ll of Sairee's claims fail as a matter of law because there is no evidence that Audisio caused the injuries [Sairee] sustained on August 10, 2018." ECF 64-1, at 7. Specifically, he contends that "Sairee has no evidence to contradict Audisio's testimony" about Audisio's conduct that night, *id.*, and that any evidence she has produced is "entirely . . . circumstantial," ECF 69-1, at 5. Accordingly, Audisio argues, Sairee has produced no evidence from which a factfinder could reasonably conclude that Audisio engaged in the allegations upon which she founds Counts I, II, III, and IV. *See id.* After thoroughly reviewing the record, the Court disagrees.

It is true that some of Sairee's evidence may be classified as circumstantial. Even so, that does not mean it cannot create a genuine dispute of material fact. Generally, "circumstantial evidence is treated no differently than direct evidence." *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 764 (4th Cir. 2021) (quoting *United States v. Jackson*, 863 F.2d 1168, 1173 (4th Cir. 1989)); *see also Ross v. State*, 155 A.3d 943, 959 (Md. App. 2017) ("Maryland has long held that there is no difference between direct and circumstantial evidence. It is, in fact, now an axiom of law that [n]o greater degree of certainty is required when the evidence is circumstantial than when it is direct." (alteration in original) (internal quotation marks and citation omitted)). Maryland case law widely recognizes that principle, in both the criminal and civil contexts. *See, e.g., Pryor v. State*, 6 A.3d 343, 353 (Md. App. 2010) ("As with direct evidence, circumstantial

10

evidence will sustain a conviction when all the facts taken together do not require [] the fact-finder to resort to speculation or mere conjecture."); *Dow v. L & R Props., Inc.*, 796 A.2d 139, 143 (Md. App. 2002) ("[T]he circumstantial evidence presented by appellants in response to the motion for summary judgment was sufficient, even without the aid of an evidentiary presumption, to generate a genuine dispute as to material fact and thus to defeat the motion.").[12] With respect to negligence, Maryland courts have expressly pronounced that "[c]ircumstantial evidence may support a negligence determination if it 'amount[s] to a reasonable likelihood or probability rather than a possibility.'" *Id.* (quoting *Peterson v. Underwood*, 264 A.2d 851, 855 (Md. 1970)). Put another way, "as with direct evidence, circumstantial evidence is only sufficient 'if the circumstances, taken together, do not require the trier of fact to resort to speculation or conjecture'" to reasonably infer liability to the level of certainty necessary for the type of proceeding at issue. *See Brown v. State*, 957 A.2d 654, 664 (Md. App. 2008) (quoting *State v. Pagotto*, 762 A.2d 97 (Md. 2000)).

Here, Sairee offers a considerable amount of evidence to support the inference that Audisio intended a harmful or offensive contact to Sairee without her consent, breached a duty to her (whether ordinarily or grossly), and intentionally or recklessly engaged in extreme or outrageous conduct towards her that resulted in serious physical injuries and emotional distress. Sairee offers undisputed evidence of incredible injuries to her person from August 10, 2018—skull fractures to her right temporal bone and to her occipital bone, ECF 59-4, at 2; ECF 59-5, at 1, resulting in a

---

[12] Another example is the doctrine of *res ipsa loquitur*, which "permits an inference of actionable negligence in some unspecified way based on circumstantial evidence of events, even though the plaintiff [is] unable to prove a specific act." *Gillespie v. Ruby Tuesday, Inc.*, 861 F. Supp. 2d 637, 642 (D. Md. 2012) (quoting *Page v. Nat'l R.R. Passenger Corp.*, 28 A.3d 60 (Md. App. 2011)). "The justice of the rule permitting proof of negligence by circumstantial evidence is found in the circumstance that the principal evidence of the true cause of the accident is accessible to the defendant, but inaccessible to the victim of the accident." *Blankenship v. Wagner*, 273 A.2d 412, 414 (Md. 1971).

significant traumatic brain injury and Major Neurocognitive Disorder, ECF 59-7, at 29—for which there is no certain cause. Sairee has also produced a report from her treating neurosurgeon, Dr. Zalatimo, who opines that it is his "opinion to a reasonable degree of medical certainty that it would be highly improbable that the injuries sustained by [Sairee] were a result of a fall from a standing or sitting height," and that further "the nature of the fractures is consistent with multiple impacts, or an impact occurring to one portion of [Sairee]'s head, while her head is pressed against another surface." ECF 59-5, at 2. Moreover, it is undisputed that Audisio was with Sairee in the apartment before she was injured, during which time he admits that they argued. ECF 59-6, at 26; ECF 64-3, at 122–24. Furthermore, the record includes evidence regarding law enforcement's investigation of the apartment Sairee and Audisio shared, in which investigators found blood on the bedroom wall and carpet, and noted that "[a] large section of carpet was removed from [that] area which also revealed a substantial amount of blood which had soaked through to the carpet padding." ECF 68-5, at 5. Investigators also took photographs of "scratches on the Defendant's face, neck, back, chest, and back of head," and "observed [Audisio] to have a busted lip and a broken right second toe." *Id.* Law enforcement determined those injuries were "consistent with a physical altercation." *Id.* at 5–6.[13]

---

[13] Sairee further argues that summary judgment is improper here "most glaringly because Defendant Audisio has created disputes of material facts through his own conflicting statements and testimony," ECF 68-1, at 6. Sairee specifically points to several contradictory statements in Audisio's testimony that she contends give rise to such disputes. *Id.* at 2–5. The Court is mindful that "the fact finder's 'prerogative not to believe certain testimony . . . does not constitute affirmative evidence to the contrary.'" *Strong v. State*, No. 0923, Sept. Term, 2022, 2025 WL 900760, at *13 (Md. App. Mar. 25, 2025) (quoting *In re Gloria H.*, 979 A.2d 710, 719 (Md. 2009)), *cert. denied*, 340 A.3d 692 (Md. 2025). While Sairee may certainly use any purported inconsistencies to attack the credibility of Audisio's evidence or testimony at trial, if the opportunity arises, the Court does not deny Audisio's cross-motion for summary judgment solely on the basis of those alleged inconsistencies.

Audisio attempts to analogize this case to *Davis v. Regency Lane*, 245 A.3d 115 (Md. App. 2021), in which the Appellate Court of Maryland upheld the Circuit Court for Prince George's County's grant of a defendant's motion for summary judgment. ECF 69-1, at 6. In *Davis*, two teenagers were shot and killed by an unknown assailant outside an apartment owned by Regency Lane, LLC ("Regency"). *Davis*, 245 A.3d at 118. The teenagers' estates sued Regency and alleged that it "failed to exercise reasonable care in providing adequate security measures on the premises to protect tenants and invitees from foreseeable criminal activity." *Id.* The intermediate appellate court concluded that there was a genuine dispute of material fact on the issue of the duty owed to the teenagers, *id.* at 127–32, because there was sufficient evidence "for a fact finder to conclude that Regency knew or should have known that there was a dangerous condition on the premises" and that such a condition was reasonably foreseeable, *id.* at 131–32. However, the court ultimately affirmed the circuit court's grant of summary judgment because "appellants had not shown that a dangerous condition contributed to the shooting"—*i.e.*, they had failed to prove causation. *Id.* at 32. Specifically, "appellants produced *no* evidence regarding the circumstances of the shooting." *Id.* (emphasis added). In so holding, that court remarked:

> No witness was identified who had personal knowledge of how the shooting occurred or what precipitated it. Appellants produced no evidence of the identity of the shooter or shooters or whether they were trespassers, tenants, or someone else authorized to be on the premises. There was no evidence whether the gate was broken on the night of the shooting or whether the shooter(s) entered the premises through that gate. . . . Appellant produced no evidence of the timeframe during which the events leading up to the shooting took place, whether it happened quickly or over a period of time. There was, therefore, no evidence to support a finding that extra security patrols or other security measures could have prevented the shooting.

*Id.* at 132–33.

*Davis* is distinguishable from the instant case. First, plaintiffs there were not attempting to show the direct cause of the injury to the victims, but rather to establish premises liability from the

13

condition(s) giving rise to the harm. *See id.* at 121, 127. "Where the breach of duty is the failure of a landlord to provide security measures against known criminal activity, proximate cause will be found if 'the breach enhanced the likelihood of the particular activity which occurred.'" *Id.* at 132 (quoting *Scott v. Watson*, 359 A.2d 548, 556 (Md. 1976)). By contrast, the issue of causation here deals with the direct cause of the Plaintiff's injuries, rather than causation with a step already removed. Second, the lack of evidence in *Davis* is not comparable to the record in the instant case. Without *any* evidence of the circumstances of the shooting—including the state of the premises or "the timeframe during which the events leading up to the shooting took place," *id.* at 132–33—the court could not conclude that there was a genuine dispute of material fact regarding whether Regency's alleged breach of duty enhanced the likelihood of that particular crime occurring. *See id.* at 132–33. To the contrary, the record here contains evidence regarding the circumstances immediately leading up to and after whatever events caused Plaintiff's injuries, *see, e.g.*, ECF 68-5; Ex. C. While the cause of Sairee's injuries is not a foregone conclusion, the Court has no trouble concluding that a fact finder's determination that Audisio was the cause of such injuries would not be based on "mere speculation." *See Davis*, 245 A.3d at 133.

There is another problem with Audisio's argument. As Sairee notes, because "only Audisio is capable of providing competent testimony on the issue" he alleges that this "clears him of any liability in this matter." ECF 64-1, at 7.[14] This conclusion would effectively preclude an incapacitated victim from ever recovering for their harms where their injuries have left them unable to remember or testify to the events giving rise to such injuries. *See Hinson v. Bias*, 927 F.3d

---

[14] *See also* ECF 68-1, at 6 ("The entire basis for Defendant's Motion is that because Plaintiff Sairee's injuries were so severe they have rendered her unable to testify, Defendant Audisio's version of events must be taken as undisputed.").

14

1103, 1118 (11th Cir. 2019) ("[W]e view all facts and draw all reasonable inferences in favor of the non-moving party when reviewing a summary-judgment ruling. This means that we normally take as true the testimony of the non-moving party . . . . But here, we cannot do that since Hinson . . . has no memory . . . . Of course, we would not want to reward an officer for unlawfully engaging in actions that rendered the arrestee unable to rebut the officer's version of events. So, that Hinson cannot personally rebut the Officers' story does not mean that we must necessarily accept the Officers' version of events."); *Wysong v. City of Heath*, 260 F. App'x 848, 852–53 & 853 n.2, 856–57 (6th Cir. 2008) (reversing a district court's denial of summary judgment because plaintiff could not "raise a genuine dispute of material fact," but distinguishing the former evidence that plaintiff was "unconscious" or "knocked out" from plaintiff's new testimony that he was not knocked out but rather simply had "no memory of the relevant events"); *see also Moreau v. Gerardi*, No. CIV.A. 08-40117-FDS, 2010 WL 4961676, at *6 (D. Mass. Nov. 24, 2010) ("The mere fact that Moreau has no recollection of the alleged assault itself does not indicate that there is no genuine dispute of facts; rather, plaintiffs' evidence, although circumstantial, is sufficient for a jury to infer that it is more likely than not that Gerardi caused his injuries.").

Reviewing all evidence in the light most favorable to her, Sairee has generated a genuine dispute of material fact as to how Audisio acted on the evening of August 10, 2018 and whether those actions caused her grievous injuries. While Sairee cannot herself provide testimony about what occurred the evening of August 10, 2018, her claims are also not founded on "mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985). Consequently, Audisio's cross-motion for partial summary judgment is denied.[15]

---

[15] Audisio argues in the alternative that, even if factual disputes exist on this record, they are not material. ECF 69-1, at 2. "A fact is 'material' if proof of its existence or non-existence would affect disposition of the case under applicable law." *Sedar v. Reston Town Ctr. Prop., LLC*, 988

15

### B. Sairee's Motion (Damages)

Sairee requests that the Court order that Plaintiffs have established as a matter of law Sairee's future economic damages in the amount of $5,316,842.00. ECF 59-2, at 1. Audisio presents two primary counterarguments to that request. *See* ECF 64-1. First, Audisio argues that if the Court determines he is entitled to summary judgment on Sairee's claims, then the issue of her damages is moot. ECF 64-1, at 8–9. But as explained above, the Court makes no such determination. *See supra* Section III.A. Second, Audisio argues that Sairee's request for partial summary judgment is premature. ECF 64-1, at 9. He asserts that "Sairee must establish liability prior to determining and assigning damages." *Id.* (citing *Mt. Royal Cab Co. v. Dolan*, 171 A. 854, 854 (Md. 1934)). Further, Audisio argues that even if "Plaintiffs are able to establish liability, . . . Plaintiffs' experts will be subject to cross examination, and it will be in the jury's discretion, as the trier of fact, to determine damages." *Id.* (first citing *Bankert by Bankert v. United States*, 937 F. Supp. 1169, 1184–86 (D. Md. 1996); and then citing Md. Code Ann., Cts. & Jud. Proc. § 11-109(b)).

"As a general matter, district courts may exercise their discretion to deny motions for summary judgment in certain circumstances, including where the procedural posture of the case dictates that judgment would be improper." *In re Marriott Int'l Inc., Customer Data Sec. Beach Litig.*, No. 19-CV-654, 2023 WL 4351333, at *3 (D. Md. July 5, 2023) (first citing 10A C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure: Civil* § 2728 (4th ed. 2017); and then citing *Haskins v. Hawk*, Civ. No. ELH-11-2000, 2013 WL 1314194, at *23 (D. Md. Mar. 29, 2013) ("[A]

---

F.3d 756, 761 (4th Cir. 2021) (quoting *Wai Man Tom v. Hosp. Ventures LLC*, 980 F.3d 1027, 1037 (4th Cir. 2020)). As discussed above, there are genuine disputes of fact on this record about Audisio's conduct on August 10, 2018 and the cause-in-fact of Sairee's injuries that same day. The resolution of such disputes are capable of affecting the disposition of all Sairee's claims against Audisio and thus are material.

16

district court has discretion 'to deny summary judgment motions even when the standard [might] appear[] to have been met.'")). Summary judgment is not typically appropriate "where it is used 'as a vehicle for obtaining rulings on issues that may never have to be addressed.'" *Stormo v. State Nat'l Ins. Co.*, No. 19-cv-10034, 2021 WL 4973835, at *2 (D. Mass. Oct. 26, 2021) (quoting *Marshall Contractors, Inc. v. Peerless Ins. Co.*, 827 F. Supp. 91, 93 (D.R.I. 1993)). For at least that reason, "[c]ourts generally refuse to entertain motions for partial summary judgment on damages where a party's liability has not yet been determined." *Id.* (collecting cases). Indeed, "'partial summary judgments' with respect to questions the existence of which depend upon the resolution of controverted matters" may be "tantamount to advisory opinions." *Marshall Contractors, Inc.*, 827 F. Supp. at 93 (citing *Flast v. Cohen*, 392 U.S. 83 (1968)).

Sairee seeks to evade the reach of this precedent by arguing that she is not asking the court to *award* damages for her future medical care, but rather to hold that "Plaintiffs have *established as a matter of law* that the amount of Plaintiff Sairee Wright's future economic damages is $5,316,842.00." ECF 68-1, at 9 (emphasis added). Moreover, she argues that granting summary judgment on this issue will allow parties to avoid the time and costs associated with calling damages experts at trial.[16] *Id.* However, damages here should not be determined until the Defendant's liability is first established. "The contingent nature of the partial summary 'judgment' [a plaintiff] seeks with respect to *damages* makes it readily distinguishable from the type of partial summary judgment on *liability* contemplated by Rule 56(c)." *Marshall Contractors, Inc.*, 827 F. Supp. at 93 (emphasis in original). Further, though Audisio agrees that "Plaintiffs' expert report and Sairee's medical bills are truthful," the Court does not read Audisio to be abandoning the right

---

[16] Plaintiffs note that the length of trial is especially important to Sairee, who lives out of state and has exceptional medical needs due to her injuries. ECF 68-1, at 9. While the Court is sympathetic to those concerns, summary judgment does not present the proper vehicle for addressing them.

to contest damages in the event he is found liable for Sairee's injuries, as he expressly notes that these experts will be "subject to cross examination" and argues that the amount of damages is "up to the fact-finder." ECF 64-1, at 10.[17] While the Court is sympathetic to Sairee's cost-saving efforts, it declines to grant partial summary judgment before the issue of Audisio's liability has been resolved.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Sairee Wright's motion is denied and Defendant Francis Alexander Audisio's motion is denied.

A separate implementing Order will issue.

Dated: October 7, 2025

/s/
Brendan A. Hurson
United States District Judge

---

[17] The Court notes that there are situations where summary judgment as to damages may be appropriate. *See Applied Cap., Inc. v. Gibson*, 558 F. Supp. 2d 1189, 1208 (D.N.M. 2007) (granting partial summary judgment as to certain damages in a civil fraud case where "there [wa]s no factual dispute concerning the amount that was fraudulently obtained from [the plaintiff]" and where "the defrauded amount [wa]s a sum certain"). However, such controversies ordinarily present alleged breaches of contract or similar situations where "the moving party has demonstrated that damages are undisputed and in an amount that does not require the jury or the court to resolve conflicting facts[.]" *Alig v. Quicken Loans Inc.*, No. 5:12-CV-114, 2017 WL 5054287, at *22 (N.D. W. Va. July 11, 2017) (collecting cases). The Court does not view this case as one where damages will be wholly uncontested and thus declines to grant partial summary judgment.